JUDGE KATHLEEN CARDONE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| BRANDON CALLIER, <br><br> Plaintiff, <br><br> v. <br><br> TITAN FUNDING PARTNERS LLC a New York Limited Liability Company <br><br> Defendants. | § § § § § § § § § § § § § <br><br> EP23CV0252 |

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1. Plaintiff is BRANDON CALLIER ("Plaintiff") a natural person, resident of the Western District of Texas, and was present in Texas for all automated text messages, in this case in El Paso County, Texas.

2. Defendant TITAN FUNDING PARTNERS LLC ("Titan") is a limited liability company organized and existing under the laws of New York and can be served via registered agent Premier Corporate Service at 90 State St, Suite 700 Box 10, Albany, NY 12207.

### JURISDICTION AND VENUE

3. Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

4. This Court has specific personal jurisdiction over Titan because Defendant purposefully availed itself to the State of Texas and to this District, and there is a sufficient relationship

1

between Defendant Titan's purposeful contacts with Texas and the litigation.

    a. Defendant Titan targets Texas when marketing small business loans and regularly conducts business in this District, including telephone solicitation.

    b. Its agents sent texts to Plaintiff's El Paso area phone number with area code 915 to generate leads for Defendant Titan.

    c. The purposeful texts to Texas injured Plaintiff in Texas, creating a causal link among Defendant Titan, the forum, and the litigation that exceeds the non-causal affiliation that is sufficient to support personal specific jurisdiction. *See Ford Motor Co. v Mont. Eight Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021).

5.    Venue. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District. Residing in the Western District of Texas when he received a substantial if not every single automated text message from Defendant Titan that is the subject matter of this lawsuit.

6.    This Court has venue over Defendant because the automated text messages at issue were sent by or on behalf of the above-named Defendant to Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION ACT
## OF 1991, 47 U.S.C. § 227

7.    In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in

1991 U.S.C.C.A.N. 1968, 1969-71.

8. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system ('ATDS") or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

9. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

10. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

11. Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

12. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

13. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

14. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing*

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

*the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

15. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

16. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

17. The FCC confirmed this principle in 2013, when it explained that "a seller ... may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

18. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

19. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g., Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist.

LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## FACTUAL ALLEGATIONS

20. Plaintiff personally successfully registered his phone number ending in 4604 on the National Do Not Call Registry in December 2007.

21. At all times relevant hereto, Plaintiff was the subscriber of the personal telephone number ending in 4604.

22. Defendants routinely violate the TCPA as part of their business and knowingly and willfully commit TCPA violations.

23. Plaintiff did not have a prior existing business relationship with Defendant.

24. Plaintiff did not give consent to any of the text messages.

25. Plaintiff received at least eight (8) automated text messages to his personal phone number ending in 4604 without his consent and not related to an emergency.

26. On February 21, 2023, Plaintiff received the first automated text message soliciting for business funding from phone number 430-204-8792. The text message stated the following.

   "Hi this is Derek, from Titan. Offering funding for your business…"

27. The text messages did not target Plaintiff.

28. Text messages #2 - #8 were similar to the message described in paragraph 26.

29. Each of the text messages received from Defendant Titan were solicitation text messages that solicited business funding as the product and service.

30. Table A shows the text messages sent to Plaintiff by Defendants Titan.

TABLE A:

| Number: | Date: | Time: | Caller ID: | Note: |
|---|---|---|---|---|
| 1. | 02/21/2022 | 7:48 AM | 430-204-8792 | Automated text |
| 2. | 03/31/2023 | 1:04 PM | 470-903-7369 | Automated text |
| 3. | 04/12/2022 | 6:34 PM | 470-903-7369 | Automated text |
| 4. | 06/07/2022 | 4:27 PM | 678-884-8942 | Automated text |
| 5. | 06/08/2022 | 10:39 AM | 254-765-6892 | Automated text |
| 6. | 06/22/2022 | 11:40 AM | 479-346-0692 | Automated text |
| 7. | 07/07/2022 | 8:48 AM | 872-272-8734 | Automated text |
| 8. | 07/25/2022 | 12:11 PM | 619-404-4091 | Automated text |

31. Plaintiff did not have a preexisting relationship with Defendant Titan, had never been a customer of Defendant Titan and had never applied for a loan or any other accounts with Defendant Titan.

32. Plaintiff's phone number had no reason to be in any database controlled by Defendant as Defendant Titan had not reason to

33. Plaintiff infers an ATDS was used because:

   a. Plaintiff was never a customer of Defendant Titan and Defendant Titan did not have a legitimate reason to have Plaintiff's phone number on any list, or database, from which Plaintiff's phone number would have been sent text messages.

6

b. Random of sequential generation explains how Defendant Titan obtained and texted Plaintiff's number, considering Plaintiff did not give it to Defendant Titan, or have a relationship with Defendant Titan, or otherwise consent to the text messages.

c. Had Defendant Titan obtained Plaintiff's number from a pre-existing list, rather than through random or sequential generation, the list likely would have been scrubbed against the National Do Not Call Registry and Plaintiff's number would have been removed.

d. Had Defendant Titan obtained Plaintiff's number from a pre-existing list, rather than through random or sequential generation, the list likely would have been scrubbed against the Defendant Titan's internal Do Not Call list and Plaintiff's number would have been removed.

e. Defendant Titan's text messages to Plaintiff came from owner Derek Owens from seven different phone numbers with seven different area codes.

34. Defendant Titan placed multiple text messages to Plaintiff within a twelve-month period to Plaintiff's residential phone line, listed on the National DNC registry since 2007, which violated § 227(c) and 47 C.F.R. § 64.1200(c).

35. Defendant Titan knew or should have known that its conduct would violate the TCPA and its regulations because Plaintiff has been on the National Do Not Call Registry since December 2007. Plaintiff's Cell Phone is a Residential Phone

36. No emergency necessitated none of the alleged illegal automated text messages.

37. Plaintiff has limited data storage capacity on his cellular telephone. Incoming telemarketing text messages consumed part of this capacity.

38. Owner Derek Owens ("Owens") personally participated in the text messages alleged herein and Plaintiff retains the right to personally include Owens as a Defendant.

## INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES AS A RESULT OF THE TEXT MESSAGES

39. Defendant's text messages harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

40. Defendant's text messages harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

41. Defendant's text messages harmed Plaintiff by intruding upon Plaintiff's seclusion.

42. Plaintiff has been harmed, injured, and damaged by the text messages including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of his cell phone.

## PLAINTIFF'S CELL PHONE IS A RESIDENTIAL NUMBER

43. The calls to Plaintiff's personal cell phone that he uses for personal, family, and household use. Plaintiff maintains no landline phones at his residence and has not done so for at least 15 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays for the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

## COUNT ONE:
### Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Automated Telemarketing Without Prior Express Written Consent

44. Plaintiff incorporates the preceding paragraphs 1-43 as if fully set forth herein.

45. Defendant Titan, and/or their agents placed eight (8) automated text messages to Plaintiff's cellular telephone.

46. Plaintiff never consented to receive automated text messages from Defendants Titan. Plaintiff has had no relationship with Defendants Titan.

47. Defendant Titan's automated text messages were made for the purposes of advertising and marketing their goods and services. These automated text messages constituted commercial advertising and telemarketing as contemplated by the TCPA.

48. The automated text messages were made using an ATDS to the cellular phone of Plaintiff in violation of 47 U.S.C. § 227(b)(1)(A)(iii) and (B).

49. As a result of their unlawful conduct, Defendant Titan repeatedly invaded the personal privacy of Plaintiffs, causing Plaintiff to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling Plaintiff to recover $500 in statutory damages for each violation and an injunction requiring Defendant Titan to stop their unlawful text message campaigns.

50. Not only did Defendant Titan make these violating automated text messages, but Defendant and/or their agents also did so "knowingly" and/or "willfully' under 47 U.S.C. § 227 (b)(3)(C).

51. If the Court finds that Defendant Titan willfully or knowingly violated this subsection, the Court may exercise its discretion to increase the amount of the award from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

## COUNT TWO:
### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))

52. Plaintiff incorporates the preceding paragraphs 1-43 as if fully set forth herein.

53. The foregoing acts and omissions of Defendant Titan and/or their affiliates or agents constitute a violation of FCC regulations by making multiple telemarketing solicitations to a consumer on the National Do-Not-Call Registry within a 12-month period in violation of 47 C.F.R. § 64.1200(c)(2).

54. Defendant Titan sent eight 8 text messages to Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the text messages, in violation of 47 U.S.C § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

55. Plaintiff was statutorily damaged at least eight (8) times under 47 U.S.C. § 227(c)(3)(F) by Defendant by the automated text messages described above, in the amount of $500 per automated text message.

56. Plaintiff is entitled to an award of at least $500 in damages for each such violation, 47 U.S.C. § 227(c)(5)(B).

57. Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brandon Callier prays for judgment against the defendant jointly and severally as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendant violates the TCPA and Texas state law;

C. An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D. An award of $1500 per automated text message in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against the corporations and individuals for 9 automated text messages.

E. An award of $1500 per automated text message in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the corporations and individuals for 8 automated text messages.

F. An award to Mr. Callier of damages, as allowed by law under the TCPA;

G. An award to Mr. Callier of interest, costs, and attorneys' fees, as allowed by law and equity.

H. Such further relief as the Court deems necessary, just, and proper.

Jury Trial Demanded

Dated: June 30, 2023                                      Respectfully submitted,

Brandon Callier
Plaintiff Pro-se
6336 Franklin Trail
El Paso, TX 79912
915-383-4604
Callier74@gmail.com